Good morning. Thank you, Your Honors. May it please the Court. My name is Al Clayton. Honored to be here from Alaska to speak on behalf of the Sykes. We are here in a life insurance case, which is perhaps not as challenging as the last the Court heard, but is still important to the parties.  Diversity jurisdiction, state of Alaska law is the substantive law. What I would suggest is that we focus on development in state of Alaska law since the district court made its decision on summary judgment. And specifically, there is the Weaver case, which was a certified question presenting a question about whether a pollution exclusion would be enforced. And what we found was that the Alaska Supreme Court was presented with a question, which some of the parties said was settled under Alaska law. We have an old case. It had enforced a sudden pollution exclusion. The one party said there's nothing new here. In this case, the Wheeler case, the Alaska Supreme Court said, well, no, there really is something new here. We have new facts. We have a new policy that was not interpreted. And so we are going to carefully review the insurance contract. And we're going to do that from the perspective of the reasonable lay insurance consumer. In the Wheeler case, the Alaska Supreme Court went through the policy. It carefully examined the insurance company's position, and it found that that position was a reasonable interpretation of the language of the policy. But it then said, and we must now consider whether the insurance interpretation is also reasonable. And it used phrases like they have a hard hill to climb. The Alaska Supreme Court nevertheless found that the insurance interpretation was also reasonable and adopted that interpretation, finding the pollution exclusion was not enforceable on the facts and in the circumstances of that case. Let me jump in here about the facts of this case. So this case is, I'm not an insurance guy, but I mean, in this job, you have a lot of insurance cases. So I just want to make sure I understand how this policy was going to work. So there's a $50,000 effectively deposit made, correct? At the initiation of the, when you sign the contract, you give them $50,000, right? Yes. Okay. Well, a deposit or a premium? Right. A $50,000 of a premium is paid, and I guess the idea with this policy, the way it would work from the insurance company's perspective, how they make money on it, is that if we assume a 7 percent interest rate forever or for a long period of time, eventually the insurance company will make money on that. But if the interest rates go below 7 percent, then they're not going to make money on this policy. Is that fair? It may be fair, but I would suggest that none of that mathematics or what the insurance company is going to do with the money has anything to do with the expectation. Oh, sure, sure, sure. I'm just trying to understand the mechanics of how this was supposed to work because if I can understand the mechanics of how it's supposed to work, then I have a better sense of kind of what was going on here. So from a business, and I'm asking and opposing counsel the same questions, from a business perspective, the idea was we set, you know, it's like all insurance policies, right? They pay the money and you float the rate, you pay the rates, and the hope is that the rates will stay higher. Okay. So help me understand, and again, no trick questions here. There's this terminology in the policy, maximum total premium, and your take is that that meant $50,000 and that was it. Correct. And that was the deal that the party struck. Correct. And that was the expectation based upon the application as well that showed that the $50,000 was going to buy a particular amount of insurance, and that was going to be paid through age 95. And that was the gamble that the insurance company would take would be if the clients were to pass away soon, they would make money on it. I mean, so they passed away. Okay, I see there. Now, so here's my follow-up question to that, is that the district court granted summary judgment. I know that's not what you wanted, but that's what happened. If we were to give you the relief you're seeking today and the case were to go to trial, what are the tribal issues of fact still open right now? Well, if the court were to interpret the policy as we suggest it must because there is a reasonable basis for the conclusion that no further premiums would be expected, the court would remand the case. There would be a trial on the rest of the bad faith issues, which would include such things as, was it a misrepresentation back at the beginning of the contracting for an insurance company to make this gamble and then hide within boilerplate language this one sentence that said, hey, if the insurance company miscalculates, we're going to come back and we're going to demand some additional premium from you. And then what? Well, at the time of contracting, no human, no person, not an insured, not the insurance company laid out in any part of the contract what amount of premium could be paid. That's part of the problem. This one sentence we would submit is unenforceable because it does not give the parties any of the particular material terms for additional premium payments. Counsel, I just want to clarify something. There's, I think, a dispute of fact about whether the illustration became part of the insurance contract and the answer to that question, could that affect whether the insured's interpretation is reasonable or not? I think that you're correct that that is a material issue of disputed fact. I think if you go to the excerpt, ER 193 begins the contract that the insured understood existed and it ends with the application and it has an entire contract clause and that entire contract clause does not refer to illustrations. So we would submit that the illustration that is part of the record is not a part of the contract. There's a dispute about that and, in theory, it's not, as I recall, the illustration itself is not signed but something that they reviewed along with the illustration is signed so maybe there'd be a dispute about whether or not the illustration was part of the thing that they signed. It has to do with timing, I think, Your Honor. There is a signed illustration. It is dated after the issuance of the policy and so from the reasonable insured's perspective, we would submit that that's kind of the bait and switch, get us to sign up, hide the immeasurable premium, and then give us an illustration. The illustration, still, does not critically disclose any sort of a premium payment that could be anticipated in the future. This is the problem 20 years after the insured's parted with their maximum total premium of $50,000. Sorry, I guess what I want to know is, is that a dispute of fact that could affect the legal question about whether the plaintiff's interpretation or the insured's interpretation is reasonable or would you prefer to say even assuming plaintiffs signed it as a matter of law, it did not become part of the contract? Do you understand the difference? What is your position? Our position is the illustration is not a part of the contract. As a matter of fact or as a matter of law? As a matter of fact and law, the illustration did not exist at the time of the signing of the contract, of the issuance of the contract, and therefore should not be considered to be part of the contract. The district court took the illustration into account as part of relevant extrinsic evidence, right? So I guess I want to just make sure I really understand your position. Can you say even assuming plaintiffs received it and signed it on the date shown of the signature, that as a matter of Alaska law, that is not part of the insurance contract and should not have any bearing on what their reasonable expectation was under the contract? Precisely, yes. And the way to get there, I would suggest, is set aside the three briefs with all of our narrative and our description of what the contract says. Start fresh with the actual contract. Read the table of contents, which telegraphs what important parts are. Look for something in the... I think their argument would be that, yeah, they would not dispute that, I think, but assuming they didn't dispute that, then they would say a month later, we offered this illustration and you amended it, and they signed it, so they amended the contract to add it. So their argument might be that even if it started as a one payment, $50,000, that's all, you agreed to something else a month later. And are there any factual disputes that relate to that, or is that something that we could just decide on the law? I think you can still decide, accept that. Accept that the illustration exists. It was an amendment to the contract.  Okay, so if we accept that, then why do you still win? Well, because when you start fresh, as I've suggested, and you look at the premium, the policy specifications, which are clear and we would say unambiguous, and then you look at the structure of the contract, as the Wheeler case did. No, no, the problem with that argument is, so you're saying they entered into one type of contract, but effectively what they did is one month later, they bought a different, they completely changed their insurance contract. So why does it matter what was in the original one, if we assume that as a matter of law, they amended it to turn it into what the insurance company now says it is? Because when you read even that additional information, in the light that the Alaska Supreme Court requires, and you find the buried in boilerplate 25, I'd invite you to look at the structure and the font, and the bottom line is an insurance consumer would not understand, would not comprehend, and would not fathom that an additional. Let me ask you, you're running out of time and I want to make sure. In your brief on page 29, you had said that they had the undisputed deposition testimony by Ms. Sykes, Lila Sykes, that they, quote, advised the Sykes at the time of purchase, that the agent, that their insurance agent had advised the Sykes at the time of purchase that the policy premium was a one-time single payment of $50,000, and you cited the ER 37, 104, and 110. My clerk could not find that in the record. And so we couldn't find anywhere in the record where Ms. Sykes said during her deposition testimony, said what you said she said in your opening brief on page 29. So I'm putting you on the spot here, so I don't expect you, but if that is in the record, that would be nice to know, because that would be a factual dispute related to the, that would be extrinsic evidence related to the formation of the contract, but it doesn't look to me like that's in the record. I'll be happy to look for that in the record and submit something. And I do see that I've got one and a half minutes. Do you want to reserve? Yes, please. Very well. We'll go one and a half. Good morning. Franz Hardy on behalf of Appalee Transamerica Life Insurance Company, the successor and interest to Baker's United Life Assurance Company. May it please this court. This court should affirm the district court's entry of summary judgment. The insurance policy allows for the flexible payment of premiums, not the singular or sole payment of one premium. In exchange for an initial premium of a maximum total of $50,000, Baker's United guaranteed that the policy would remain in force for at least 24 years, from 1993 to 2017. And even after 2017, no premiums were owed, so long as the value of the policy exceeded the monthly cost of insurance. And over the years, if the insurer chose to insure a longer in-force period, they needed to pay additional annual premiums, not to exceed the maximum annual premium amount per year. Or alternatively, they would have to pay a calculated premium upon notice of a potential lap during the grace period. Ultimately, There's a mistake in the policy on page under premiums on ER 199. It talks about a maximum single premium, but nowhere does it actually define what a maximum single premium. It does not talk on that page about a maximum total premium, but the maximum total premium is laid out earlier on 195. Is that – was one supposed to be – were they both supposed to be single? Were they both supposed to be total? Is this just – I mean, it seems like there's something happened here. What happened? Yes, Your Honor. As I've analyzed the policy, maximum single premium is the maximum total premium. If you said on 195 maximum single premium, right, that would kind of make it all consistent. Then I feel like your argument would be very strong, much stronger. The problem is it may be a mistake, but it says maximum total premium on this line, which is not defined anywhere, but it says it up front on the part you think you'd look at, and it says $50,000. So even assuming that's a mistake of sorts, it isn't – if we look at the application, and it says, you know, at the end of it, and it is part of the policy, and it says number of years to be paid, one scheduled premium, $50,000, scheduled modal premium, paid-up age through 95. So it says all that, and then you go and it says total maximum premium, if I'm getting the words right, maximum total premium, and you ignore the thing that was signed a month later. You assume that they didn't have that, which I think the district court said. It does seem to me that a person could fairly easily think that they were going to pay $50,000 one time, and then it's a lot harder if you actually include – maybe not a lot harder, but your argument is stronger if you include the schedule. But the table. But the table wasn't – so, you know, putting aside for a second whether or not the table was added to the contract and how that might affect things, if you acknowledge that seems to be a mistake, why does that mistake not inert to their benefit? A few different reasons, Your Honor, because under the policy, under premiums where you were alluding to, if you reference that, if you read it in context, what it's describing is the maximum amounts of the initial premium and annual premiums. You have to read that as the total of the premiums paid in all policy years. The very last line says maximum premium amounts are shown on page 3. This is on ER 199. I've got a long paragraph there, and then it says the maximum premium amounts are shown on page 3. And if you were to turn back to page 3, it says maximum total premium, which in theory would be a maximum premium amount, is $50,000. If I was to read just that, it seems to me I would think, okay, I'm going to – maximum total. One of the maximum premiums is the maximum total that I'll ever have to pay, and I'm paying that up front. That would not be a reasonable expectation from the insured's perspective, Your Honor, because if you read the premium section, the one you were just referencing, what that provision talks about are the total premiums over the total life of the policy, the initial premium, the $50,000, and then the annual premiums that are $5,184. The way you come up with the total premium or the maximum premium is talking about the total over the lifetime of the policy, not a single premium. And you have to read that provision in the context of the policy specification. Counsel, if we were talking about how to – how a bunch of lawyers would actually interpret this contract read as a whole, but we're asking how would a reasonable layperson understand this policy? And we're not saying that your interpretation – we can find your interpretation is entirely reasonable, maybe even ultimately at the end of the day legally correct if we apply all the normal rules that lawyers apply. But that's not really the question, the standard we're applying here, correct? We're asking just how would a layperson, when they applied and signed up for this policy and saw the words maximum total premium, after applying for something where they check the box, you know, single payment, right, what would they understand? For a few different reasons, the only objective reasonable interpretation is our interpretation, one of which is the illustration. The illustration is an important part of this. You cannot read it in isolation, just the policy, even though the policy describes additional premiums besides the initial premium of $50,000. I understand why you're going to the illustration, and I don't want to hijack it, but can we start earlier than that? Let's just start at the application because that is part of the – nobody contests, including you guys, that that is part of the contract. The illustration, not sure about. Is there anything in the application itself, just putting aside the actual rest of the policy, that you would point to that would indicate to a reasonable person that this is a – that you would have to pay more than $50,000? Well, Your Honor, you can't read the – No, no, I'm trying to go sequentially because I'm trying to put myself in the shoes of the layperson, right? And so if I was the person signing up for insurance and I had a discussion with the agent and I said, I want to buy insurance. What do you got? I got something, pay $50,000 once and you get 100 and whatever, 200, whatever. It seems to me that the application alone is consistent with that. But do you disagree that if you just look at the application that there's nothing in there that would tell you that there's going to be additional premiums? I feel like that's a very difficult question because you can't read an application without the context of the policy itself. And you have to read those in conjunction. And even to apply it further to Judge Sung's question, you have to read it in conjunction with the illustration. That's how this policy works. The illustration, whether you consider it part of the policy or extrinsic evidence under Alaska law, you can review it – you must review it together under the Alaska Supreme Court decision in Downing. Let me ask you about the extrinsic. If it's part of the policy, that seems a hard question. But the extrinsic evidence of just that – we showed this to her a month later and she signed it. Again, it's asking a lot to think that your ordinary non-lawyer, non-insurance person would – let's assume for a second that she thought at the time of applying and the time of signing this contract, so a month before she sees the – and that she never saw an illustration, that she thought it was a $50,000 one-time payment period. And then she gets the illustration and she signs it. And I understand your argument that, no, if you look at it, you'll see that it goes to this one point and then it shows that you – and if you read that literally fine print on there. And your argument is that – I think your argument as far as extrinsic evidence argument is that evidences that she had to have known at the time when she signed it a month earlier that – but isn't it just as plausible that she just got handed something by her agent and signed it? That's not the facts and evidence. I think what's important about the illustration, even the fact that it comes after the policy issue date, is it gave them the opportunity to say, wait a second, I didn't sign up for that. This illustration is inconsistent with how I read the application or the policy. But she had the opportunity, along with her husband, signed it, acknowledged that she understood it, and it had been explained to her. And the illustration demonstrates that based upon the $50,000, if that was the only premium that they would pay, that the guarantee by the insurance company would be that the policy would be in force from the time they signed it in 1993 to 2017. So that's critical that we read everything in conjunction. That's what the Downing case from the Alaska Supreme Court requires. The extrinsic evidence, the argument by the insurers is, well, it's not relevant extrinsic evidence because it's after the fact. Well, it's very important that it is after the fact, because it gives that opportunity. For me, my intuition is that it makes quite a bit of difference whether it's just extrinsic evidence or whether it's actually modified the contract. Because if she had signed up for a $50,000 one-time payment, but then a month later she amended her contract to say after 24 years or 28, whatever it was, you may have to make more payments. Can we ask you the question we asked your colleague on our side earlier? Is that a factual question as to whether or not it modified the contract? Is that a purely legal question? Are there facts that would need to be decided for that? No, it's not a factual dispute. And the district court gave the benefit of the doubt that the application or, excuse me, the illustration was not part of the policy. But it doesn't matter under Alaska law. It does matter? It does not matter. Let's assume we thought it did matter under Alaska law. Then I'm trying to figure out, if you assume for a second, that if it modified the contract that that does matter to me, then I'm trying to figure out is that a purely legal issue that then I would go on and decide whether or not it modified the contract or is that something that needs to go back to the district court? It would be a purely legal issue if you believe that it modified the contract to look at the illustration and it demonstrates that for a $50,000 premium the guarantee is only through 2017. You apply that, Your Honor, to the policy terms and when the— What I'm asking is, is there factual questions that would affect the inquiry as to whether or not it did actually amend the contract or not? No. So what is under Alaska law, what does that question of whether it amended the contract, what does that turn on? I would say it doesn't matter because if it did, then you can interpret the policy and the illustration together. If it does not, under Alaska law, you can consider extrinsic evidence beyond the policy, and that's what this court did. So your question, Your Honor, does not prevent this court from affirming summary judgment on undisputed facts. There's no factual issue, one way or the other, of whether the illustration amended the policy. If I could just get back to the mechanics of how this policy worked. So I understand that your position is that there was a grace period, they didn't pay during the grace period, so the policy is effectively canceled. How much money were we talking about that they— because I'm also trying to figure out if this case were to go back, and I'm not saying it will, but if it were, what really is the dispute over? Is it over that they pay nothing or that they have the opportunity to pay the delta? That's exactly the question you asked to my colleague. They would have to pay the premium in order to reinstate the policy and continue the policy on for it to continue. Now, I understand the insurers are now passed away, but they would owe that amount in order for the policy to continue. So you're—and by the premium, I assume you're saying the premium that the insurance company said that they owed, but that seems flatly inconsistent with the contract because the contract has a maximum annual premium that actually is laid out, I think, on page 3. Yeah, the $5,100. Yeah, and you wanted, like, car payment or buying car-size amounts of money, and so that can't seem right to me. So my initial instinct is that seems wrong. You think it's right? It is right, Your Honor. So what do we do with the maximum annual premium, $5,184? That was the amount the insureds could pay every year after 1993 in addition to their initial premium. That would keep the value of the policy high. In essence, if they only placed $50,000 down, they were essentially— I understand your argument now. I have to say, I'm not the dumbest person ever. That did not occur to me until you just said that. I suppose you could take the position after a certain point, you can start pouring money in there, and that way when you're short by $30,000, you've paid six times that in a year. Wow. All I can say is like an ordinary layperson, understanding that's what this contract is saying, seems—especially since, as I recall, the thing that you hang your hat on in grace period, it doesn't say anything about prepaying for six years in order to have enough in there to pay for your being short. It talks about a premium will be acquired if on the last day of the policy month, the policy value is less than the deduction schedule you made. That's right. So that's the way this policy works. There's a value in the policy. You can add value to the policy over the life of the policy. What's that amount? It's a maximum of $5,184. That's how the policy works over the years and decades it's in force. If you do not add more policy value, and the value goes down to an amount where the cost of insurance exceeds it, you're going to owe additional premiums within a grace period. You can't pay more than $51,000. The contract says you can't. You both agree that you can't pay more. So I think the answer would be you're just screwed if you're the— because you owe $20-some thousand, but you're only allowed to accept $51,000 because nobody was thinking ahead to pay for six years. So you're just—there's no way to actually keep it going. There's two ways, Your Honor. I know I'm out of time. But to answer your question, over the life of the policy, you can add the maximum annual premium amount. If you reach this grace period, notice, then you will owe a payment equal to at least two monthly deductions in order to get it out of the grace period. However, you're going to have to continue to pay premiums in the future in order to keep the policy in force. That's how this policy operates. Thank you, Your Honor. We would ask that this court affirm summary judgment as entered by the district court. Thank you. Thank you, counsel. Thank you. A couple of quick things. We do not agree, let us be clear, that the illustration was a part of the contract. So what I said was if you consider the illustration, you can still find that our interpretation is reasonable. If you look at the illustration, there's a long column of premium payments, and they're all zero. I want to speak briefly about Downing, which was an important—Downing v. Country Life, which is an important part of the district court's analysis. There the court says if you look carefully and if you read carefully, you can figure out that the maximum benefit payable in the event of a life is X amount of dollars. We have here a dispute about whether reading carefully and insured could discern whether an additional premium could be payable. And I'd suggest that as you look through the contract and you read it freshly in the briefs, but as it's— We're out of time. Can I ask the question that Judge Owens asked to your colleague, which is if we were to agree with you, what is the remedy here, I guess? Do you get—do the successors get the $231,000? What happens when this goes back? First of all, no additional premium should be payable. The life insurance should remain in place. It should not have lapsed. That life insurance benefit should be paid, and then a trial should proceed on the other causes of action. The bad faith type stuff. Exactly. Bad faith. Yes, insurance bad faith. In the handling of the claim, was the insurance company honest? Did they make representations that were correct? Were they timely? At one point, they wrote and said this— There would be factual disputes about that stuff. Yes, absolutely. If I could just jump in real quick. Look, unfortunately, the people who bought this policy, they passed away. And if you were to win, unfortunately, this case is going to go on. This is federal litigation. These things take a long time, as we know. I'm curious what, if any, mediation efforts you guys have made. You guys both seem like reasonable guys. Is there any way you guys could sit around and figure something out just to get this case over with? Look, I know, obviously, there's a delta between what you guys want over with. I'm curious what you guys would think about if we set you up with our mediation office. Well, certainly, there was a mediation, and it did fail. And it had to do with this on-off switch. If the insurance company's interpretation of the policy is correct, well, we don't have a case. If our interpretation of the case is correct, well, we say they acted very badly. And insurance companies in Alaska who act badly and do not provide the benefit that is due the insured are subject to emotional distress damages, all of the punitive damages, all of those things. So there is a range of – there is a value of the case. The answer to Judge Owens' question is, you know, even if they're willing to pay you $231,000 right now because you can get a bazillion dollars in Alaska for that, you wouldn't necessarily be willing to settle for that now if you thought you might win in front of us. I would say that the ruling of this court on whether or not summary judgment is correct would substantially shape the expectations of the process. Yeah. No, I understand. I understand. All right. All right, thank you. Thank you both for your briefing and arguing this case. People should have stayed, actually. It wasn't more interesting than you would have thought. So thank you for your argument and your briefing. This matter is submitted.
judges: OWENS, VANDYKE, SUNG